UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RAMON SILVA,<br><br>                Plaintiff,<br><br>     v.<br><br>DILEEP SREEDHARAN, et al.,<br><br>                Defendant. | CASE NO. 3:22-cv-05086-RSM-BAT<br><br>**REPORT AND RECOMMENDATION** |

      Plaintiff is currently confined at the Washington State Penitentiary at Walla Walla. He filed a *pro se* civil rights action under 42 U.S.C. § 1983, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, et seq. naming as Defendants psychiatrist Dilip Sreedharan; Cheryl Strange, Secretary of the State Department of Corrections and Merrick Garland, Untied States Attorney General. Dkt. 6. Plaintiff alleges Defendants violated his rights by denying him his religious diet and items required by his religion for use during prayer and also infringing upon his First Amendment Right to freedom of expression. *See* Complaint at Dkt. 6.

      The Court has reviewed the complaint, and concludes it contains deficiencies that no amendment could cure. As amendment would be futile, the Court recommends this case be DISMISSED with prejudice for failure to state a claim pursuant to 28 U.S.C. §§ 1915A(a) and

REPORT AND RECOMMENDATION - 1

1915(e)(2).

# DISCUSSION

**A.  Relevant Legal Standards**

The Court screens complaints filed by prisoners or detainees under 28 U.S.C. § 1915A(a) and must "dismiss the complaint, or any portion of the complaint, if it is: (1) frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." § 1915A(b); *accord* § 1915(e)(2); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

To avoid dismissal, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). The factual allegations must be "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint may be dismissed if it lacks a cognizable legal theory or states insufficient facts to support a cognizable legal theory. *Zixiang v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013).

In this case, Plaintiff alleges Defendants violated his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA). Under RLUIPA, no government "shall impose a substantial burden on the religious exercise of a person residing or confined to [a jail, prison or other correctional facility] . . . even if the burden results from a rule of general applicability," unless the burden furthers a "compelling governmental interest" and is the "least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a).

RLUIPA does not allow claims against prison officials sued in their individual capacities. *See Wood v. Yordy*, 753 F.3d 899, 901 (9th Cir. 2014) (RLUIPA does not contemplate liability of

government employees in individual capacity). The Court notes Plaintiff sues Defendants only in their official capacities.

Plaintiff also alleges Defendants separately violated his First Amendment "Freedom of Expression" rights. The allegation falls under civil rights claims brought under 42, U.S.C. § 1983. To bring a § 1983 civil rights claim, Plaintiff must show (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state or federal law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To satisfy the second prong, plaintiff must allege facts showing how individually named defendants caused or personally participated in causing the harm alleged in the complaint. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

Prisoners retain some rights under the First Amendment, *Wolff v. McDonnell*, 418 U.S. 539, 555–56, (1974), but a prisoner's First Amendment rights are "more limited in scope than the constitutional rights held by individuals in society at large." *Shaw v. Murphy*, 532 U.S. 223, 229 (2001). "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *see also Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015). To state a claim, Plaintiff must allege both that "the type of activity he engaged in was protected under the [F]irst [A]mendment and that the state impermissibly infringed on his right to engage in the protected activity." *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985).

**B.     Plaintiff's Allegations**

Plaintiff submitted an 11 Count complaint. Count I alleges "Religious Exercise Rights under RLUIPA 42 U.S.C. § 2000-cc-1 Defendant Strange is named for injunctive purposes."

REPORT AND RECOMMENDATION - 3

Dkt. 6 at 4. In support, Plaintiff claims he is the founder and leader of "The Keepers of the Light," a religion he created in 2018. *Id.* The "Guide Light" is the religion's "holy book" and sets forth the religious practices, rituals, and diet for adherents. *Id.* at 4-5. Plaintiff alleges in 2021, he asked state prison to accommodate the Keepers of the Light's practices. In specific Plaintiff requested 1) a white towel; 2) Michael Jordan Space Jam Eleven Shoes; 3) scented prayer oils; 4) cigarettes and a vape machine; 5) a keeper diet; 6) a Nintendo Switch; and 7) Personal clothing. *Id.* at 5. Plaintiff alleges his request was denied. *Id.* at 6.

In Count II, Plaintiff alleges violation of "Religious Exercise Rights under RLUIPA 42 U.S.C. § 2000-cc-1 by Defendant Dr. Dilip Sreedharan." *Id.* at 8. In support, Plaintiff alleges "apart from the religious practices in count I," Plaintiff requested accommodation for the use of marijuana to treat PTSD and depression. *Id.* at 8. Plaintiff claims Marijuana is a "sacred plant" and its use is "mandated" by the "Guide Light." *Id.* Plaintiff contends Defendant's violated his rights by denying him Marijuana.

In Count III, Plaintiff alleges Defendant Strange violated his First Amendment right to expression. *Id.* at 9. Plaintiff alleges he made requests indicting he is a fan of shows available on Netflix including standup comedy, Squid Games, Black Horror and Altered Carbon. *Id.* at 10. Plaintiff contends Defendant's denial of his access to Netflix violates his right to expression.

In Count IV, Plaintiff alleges Defendant Strange violated Plaintiff's "freedom of expression rights." *Id.* at 11. In support, Plaintiff alleges he was denied a "G-Shock watch" of the type used by the military and law enforcement.

Plaintiff alleges in Count V, Defendant Strange violated his rights by denying him "Beats headphones by Dr. Dre." *Id.* at 12.

In Count VI, Plaintiff alleges Defendant Strange violated Plaintiff's rights by denying him

REPORT AND RECOMMENDATION - 4

the right to but a X-Box gaming system. *Id*. at 13.

In Count VII, Plaintiff alleges Defendant Strange violated his rights by denying him access to YouTube. *Id.* at 14.

In Count VIII, Plaintiff alleges Defendant Strange violated his rights by not allowing him to a "Mexican Flag." *Id*. *At 15*.

In Count IX, Plaintiff alleges Defendant Strange violated his First Amendment rights of expression by not allowing him an "Apple Smartwatch." *Id.* at 16.

In Count X, Plaintiff contends Defendant Strange violated his rights by denying him a DVD player. *Id.* at 17.

In Count XI, Plaintiff alleges Merrick Garland violated the First Amendment and RLUIPA because the "controlled substance act" is the "driving force behind the violation of Plaintiff's religious exercise rights." *Id.* at 18.

As relief, Plaintiff avers that he names each Defendant in their official capacities and requests the Court grant injunctive relief that restrains Defendants from restricting Plaintiff's religious rights and right to freedom of expression. *Id.* at 19.

C. **Plaintiff's RLUIPA Claims**

The complaint before the Court is the second complaint Plaintiff has filed under RLUIPA that alleges jail or prison officials violated his rights to practice his religion "The Keeper of the Lights." Because this is the second complaint making similar allegations, the Court considers whether Plaintiff's RLUIPA claims are barred by principles of res judicata or issue preclusion.

When a second complaint is filed after judgment was entered in an earlier similar action, the Court should consider whether the second lawsuit involves a single action because (a) the rights or interests established in the first judgment would be destroyed or impaired by

REPORT AND RECOMMENDATION - 5

prosecution of the second action; (b) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts." *See Zweber v. State Farm Mut. Auto. Ins. Co.*, 39 F.Supp.3d 1161, 1166 (W.D. WA. 2014) (Noting to determine res judicata, Washington Courts apply these four factors); *see also Harris v. Jacobs*, 621 F.2d 341, 343 (9th Cir. 1980). The last two of these criteria are the most important. *Id.* Additionally, under federal law, a party does not evade res judicata merely because the party alleges conduct not alleged in the first lawsuit or by raising a new legal theory. "Rather the crucial question is whether [the party] has stated in the instant suit a cause of action different from those raised in his first suit." *Constantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982).

Although there is great similarity between the two complaints Plaintiff has filed as to his RLUIPA claims, "[r]es judicata is applicable whenever there is (1) an identity of claim, (2) a final judgment on the merits, and (3) privity between the parties." *Stratosphere Litig., LLC v. Grand Casinos, Inc.*, 298 F.3d 1137, 1143 n. 3 (9th Cir.2002). As the present Defendants were not party to the first complaint filed against agents of King County, the Court concludes the present case is not barred by res judicata.

However, the similarity between the RLUIPA claims in the first and current complaints guide the Court's analysis here. Unless there a reason to deviate from the Court's first decision dismissing Plaintiff's RLUIPA claims in the previous complaint, the Court should also dismiss the RLUIPA claims in the present case.

In the previous lawsuit, *Bacon v. Silva*, C19-619-RAJ, Plaintiff alleged under the RLUIPA and the First Amendment, King County Jail Defendants violated his right to practice the religion "The Keepers of the Light". In that case the Court noted:

REPORT AND RECOMMENDATION - 6

1  Following his return to KCCF, Plaintiff began requesting accommodations for a religion he created in December 2018 while he was in DOC custody that he calls "The Keepers of the Light." (See Dkt. # 4 at 6; Dkt. # 74, Ex. H.) Specifically at issue in this case are Plaintiff's request for a diet that satisfies the requirements of his religion (see dkt. # 8 at 3-4), and items Plaintiff claims are required by his religion for use during prayer including scented oils, music, and marijuana (see id. at 4-7.)

Plaintiff submitted with his original complaint in this action a copy of his religion's sacred/holy book which he refers to as "The Guide Light." (See Dkt. # 4 at 7; Dkt. # 4-1.) That document, which was written by Plaintiff, details the tenets and requirements of his religion. (See Dkt. # 4-1.) The document sets forth the requirements for "The Keeper Diet," including the specific times during the day when meals must be consumed (12 p.m., 3 p.m., 6 p.m., and 9 p.m.), and the rituals that must be observed by adherents ("Keepers") while preparing and consuming meals. (Id. at 18-22.) For example, according to The Guide Light, all animal and plant "beings" are to be thanked and blessed by Keepers prior to cooking (id. at 19-20), all cooking is to be done by Keepers (id. at 19), all meals are to be consumed with music and the "sacred plant," i.e., marijuana (id. at 19-20), all meals are to be consumed "in the homes away from strangers" (id. at 21), and all Keepers are to "fill themselves untill [sic] they are content" (id.).

The Guide Light also details which foods must be consumed or avoided. (See id. at 19-20.) In particular, all animals, plants, fruits, and vegetables must be chemical free, toxin free, and open range with no growth hormones, pesticides, or inhumane practices (id. at 19), all Keepers are to abstain from eating gluten, gelatin, soybeans, and genetically modified foods (id.), all Keepers are to eat animal meat three times each day which is "hot, moist, flavorful," on the bone, and properly seasoned (id. at 19-20), the meat at one meal each day is to be spiced with chili peppers (id. at 20), fresh, cold milk is to be consumed with all meals (id.), fresh chicken eggs are to be consumed hot with the first meal of each day though never in the same style as the preceding day (id.), and, all water consumed and used in preparation of meals is to be fluoride free in order to protect the pineal gland from calcification (id. at 21). The Guide Light identifies as well acceptable sources from which food may be acquired. (Id.) Specifically, all "foods and products" are to be supplied by Keepers, preferably local ones. (Id.)

REPORT AND RECOMMENDATION - 7

> The Guide Light sets out additional requirements for the "sacred feast" which is to occur six times per year on specified dates and is to include T-bone steaks, ribs, pork chops, salmon, corn on the cob, baked beans, potato salad, and deviled eggs, among other foods. (Id. at 35-36.) The feast is to commence at midnight on the designated days and to last for 24 hours. (Id. at 36.) In addition to the various dietary requirements, The Guide Light also sets forth requirements governing prayer. In particular, Keepers are to pray four times each day prior to meals and they are to use scented oils, music, and the sacred plant during prayer.2 (Id. at 14.)

*Id*. at * at 2.

The Court in *Silva v. Bacon* concluded Defendants did not violate Plaintiff's rights under the First Amendment or RLUIPA as to Plaintiff's requests to accommodate the tenants of the Keepers of the Light, his request for marijuana, and his request for headphones on the grounds Plaintiff's requests were incompatible with maintaining a detention facility and that the denial of such requests was reasonably related to legitimate penological objectives. *Id.* at * 10-31. On October 22, 2021, the Court dismissed Plaintiff's action in *Silva v. Bacon*. Dkt. 153-54.

While the first complaint involved alleged restrictions imposed upon Plaintiff by individuals at the King County Jail, those restrictions apply equally to the State Penitentiary and Defendants named in the present case. Both cases involve alleged RLUIPA violations based upon the Keeper of the Light religion; both involve allegations that occurred while Plaintiff was detained, with the first being a jail and the present being a state prison. Both decisions involve the same claim: that the defendants' failure to accommodate Plaintiff's requests to meet the needs of the "Keepers of the Light" violate RLUIPA. The conclusion reached in the first decisions that the county jail's denial of Plaintiff's accommodations request did not violate RLUIPA because the requests were incompatible with life within a jail or prison and were reasonably related to legitimate penological objectives accordingly apply here. The Court should accordingly dismiss Plaintiff's RLUIPA claims.

REPORT AND RECOMMENDATION - 8

**D.     First Amendment Claim**

In addition to the RLUIPA claim, Plaintiff also alleges Defendants violated his First Amendment rights to "Freedom of Expression" by denying him: Netflix shows of choice; a "G-Shock watch"; Beats headphones by Dr. Dre.; a X-Box gaming system; YouTube of Plaintiff's choice; a Mexican Flag; an Apple Smartwatch; and a DVD player.

Plaintiff presents no plausible set of facts or legal theory as to how or why his First Amendment right to Freedom of Expression was violated by the denial of the above items. Plaintiff's allegations do not involve protected speech of any kind. Rather they involve Plaintiff's desire to possess certain items such a G-shock watch and to watch programming of his choice on Netflix and YouTube. Because the allegations involve Plaintiff's desire for certain items and amenities, they regard Plaintiff's conditions of confinement. Claims based upon conditions of confinement are analyzed under the Eighth Amendment.

The Eighth Amendment protects prisoners from cruel and unusual punishment. Liability under the Eighth Amendment is imposed only if Plaintiff can prove he was subjected to "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25, 32, (1993).

A prison official violates the Eighth Amendment when two requirements are met: (1) the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm; and (2) the prison official must have a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825 (1994). The Eighth Amendment standard requires proof of both an objective and a subjective component.  First, the deprivation alleged by the inmate must be, objectively, "sufficiently serious".  *Farmer*, 511 U.S. at 834.  Second, the prison officials must know of and must deliberately disregard the risk of harm to the inmate.  *Id*. at 842.  If one of the

REPORT AND RECOMMENDATION - 9

components is not established, the court need not inquire as to the existence of the other. *Helling*, 509 U.S. at 35.

Only those conditions of confinement that deny a prisoner "the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir.1993) (quoting *Hudson v. McMillian*, 503 U.S. 1 (1992)). However, the deprivation of prisoner's "certain privileges, including packages, TV, radio, special purchases, and [ ] property," are not "objectively serious deprivations" because they do not "constitute the denial of life's minimal necessities."). *Puckett v. Houston*, No. 2:17-CV-0640 KJN P, 2017 WL 2619121, at *3 (E.D. Cal. June 16, 2017).

Here Plaintiff alleges he was denied certain privileges or amenities such as certain types of watches, Netflix, gaming devices, a flag, an Xbox, etc. These are not serious deprivations that constitute the denial of life's minimal necessities. In fact, many individuals who are not in prison do have any of these items, and there is thus no basis to conclude the items are necessary to meet life's minimal necessities. The deprivations of the privileges and amenities alleged by Plaintiff accordingly do not violate the Eighth Amendment.

In sum, Plaintiff's allegations the First Amendment right to freedom of expression lacks any basis. The claim rests on the deprivation of certain amenities, not an unconstitutional limitation to the right of expression. The deprivation of certain amenities, at most, relate to Plaintiff's conditions of confinement but the claimed deprivations fall far short of the denial of life's minimal necessities. The Court thus recommends denying Plaintiff's claim that his First Amendment Right to Freedom of Expression was violated. Additionally, if the deprivation of the privileges Plaintiff claim is construed as relating to Plaintiff's conditions of confinement, under

the Eighth Amendment, the claim should be denied and dismissed because the deprivations do not deny Plaintiff of life's minimal necessities.

### E. Merrick Garland

Plaintiff also sues Merrick Garland on the grounds the "Controlled Substances Act" is unconstitutional as applied to Plaintiff's request to use marijuana for religious purposes. The allegation is baseless. First the Controlled Substances Act is a statute that the attorney general has obligations to enforce, not a policy or law the attorney general created and can apply or retract at will.

Second, Plaintiff is not being prosecuted for violation or attempted violation of the Controlled Substances Act. The Act is thus not being applied to him as he alleges. Third, there is no basis to conclude the Washington Prison System would provide Plaintiff with marijuana even if the Controlled Substances Act did not exist. This is because as the Supreme Court has noted "the use of drugs can embolden inmates in aggression toward officers or each other; and, even apart from their use, the trade in these substances can lead to violent confrontations." *Florence v. Board of Chosen Freeholders of County of Burlington*, 566 U.S. 318, 332 (2012). Hence, as with limitations on alcohol in prisons, controlled substances such as marijuana, are properly banned by jail and prison officials, and would properly be banned even if the Controlled Substance Act did not exist. The Court accordingly recommends the claims against Defendant Garland be dismissed with prejudice.

## CONCLUSION

Before the Court is a complaint that is very similar to the complaint Plaintiff earlier brought against King County Jail officials. As the first complaint involved different parties the Court concludes the present action is not barred by res judicata. But while the two complaints

REPORT AND RECOMMENDATION - 11

involve different detention facilities (and thus parties), the RLUIPA claims are the same. Thus, the dismissal of Plaintiff's prior RLUIPA claim, and First Amendment claims guides this Court's recommendation that there are legitimate penological reasons to dismiss Plaintiff's RLUIPA claims. As in the first complaint, Plaintiff again argues he is entitled to certain accommodations for the Keepers of the Light religion he created such as marijuana drug use, and six yearly sacred feasts that serve T-bone steaks, ribs, pork chops, salmon, corn on the cob, baked beans, potato salad, and deviled eggs, among other foods that last for 24 hours. But those accommodations that Plaintiff requests are incompatible with prison life and normal prison conditions and should thus be denied, just as the requested Keepers of the Light accommodations were properly denied in the earlier lawsuit involving the King County Jail.

In the present complaint, Plaintiff also brings a new First Amendment "freedom of expression" claim. That claim is wholly unsupported because the claim does not involve a deprivation of freedom of expression. Rather it complains of the conditions of confinement, i.e., how Defendants have denied Plaintiff certain amenities and items. But the complained of amenities and items do not deprive Plaintiff of life's minimum necessities and thus does not support an Eighth Amendment violation.

And lastly, Plaintiff sues Merrick Garland on the grounds the Controlled Substances Act underlies Defendants' refusal to provide him marijuana. Plaintiff is not charged with violating the act and as discussed above, Defendants would be well justified in denying marijuana to prison inmates such as Plaintiff even if the Controlled Substances Act did not exist.

The Court accordingly recommends dismissing the complaint with prejudice and denying leave to amend as futile. *See Edwards v. Mondora*, 700 Fed. Appx. 661 (9th Cir. 2017) (Affirming dismissal of pro se civil rights actions on grounds leave to amend would be futile).

**OBJECTIONS AND APPEAL**

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed no later than **March 29, 2022.** The Clerk should note the matter for **April 1, 2022**, as ready for the District Judge's consideration. The failure to timely object may affect the right to appeal.

DATED this 15th day of March, 2022.

BRIAN A. TSUCHIDA
United States Magistrate Judge